**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ANGELA LOCKHART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:18-cv-02586-JPM-cgc |
| v. | ) | |
| | ) | |
| D&S RESIDENTIAL SERVICES, LP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER DENYING DEFENDANT D&S RESIDENTIAL SERVICES, LP'S MOTION
FOR SUMMARY JUDGMENT**

Before the Court is Defendant D&S Residential Services, LP's (hereinafter "D&S")

Motion for Summary Judgment, filed on April 10, 2020. (ECF No. 87.)  D&S moves the Court

pursuant to Federal Rule of Civil Procedure 56 to grant judgment in its favor as to Plaintiff

Angela Lockhart's Fair Labor Standards Act ("FLSA") uncompensated overtime claim.  (Id.)

D&S argues that Plaintiff's claim fails as a matter of law (1) because she provides only

conclusory statements in support of her allegations of FLSA overtime violations, and (2) because

D&S cannot be held liable under the FLSA for uncompensated time that it was unaware of.

(ECF No. 87-6 at PageID 611–15.)  Alternatively, Defendant argues that Plaintiff cannot

demonstrate that its alleged FLSA violations were willful.  (Id. at PageID 615–16.)

Plaintiff filed her Response in Opposition on May 8, 2020.  (ECF No. 94.)  Plaintiff

asserts that she has provided sufficient evidence to support her FLSA overtime claims.  (Id. at

PageID 1102–03.)  Plaintiff also asserts that she can prove that D&S's violations were willful

because she has set forth specific facts demonstrating that D&S knew Plaintiff was working uncompensated off-the-clock hours and that she was discouraged from reporting her overtime hours worked.  (Id. at PageID 1103–06.)

Defendant filed its Reply on May 22, 2020.  (ECF No. 98.)  Defendant argues that Plaintiff provides only conclusory, speculative allegations to support her unpaid overtime claim, that the Court should not consider her post-summary judgment affidavit, that Plaintiff waived her argument in response to Defendant's challenge to the sufficiency of her evidence, and that she asserts claims which the Court dismissed in the Order Denying Plaintiff's Motion for Leave to Amend.  (See generally id.)

For the reasons set forth below, D&S's Motion for Summary Judgment is **DENIED**.[1]

## I.     BACKGROUND

### A.     Undisputed Facts

The following facts are not disputed for purposes of summary judgment.

D&S is a Texas based limited partnership registered to do business in Tennessee. (Complaint, ECF No. 1 ¶ 9.)  D&S provides community-based services for individuals with intellectual and developmental disabilities, providing everything from in-home support services to day-habilitation programs and vocational training and residential group homes.[2]  (ECF No. 87-6 at PageID 605.)   Lockhart worked for D&S from March 2016 to February 2018 as a

---

[1] But see infra note 3 (**GRANTING** with respect to Plaintiff's forfeited minimum wage and meal break claim).

[2] Although the Parties have not explicitly listed this information in their respective statements of material facts, the Court includes this information as helpful background for Plaintiff's claim.  It has no bearing on the legal issues addressed by this Order.

program supervisor out of D&S's Memphis, Tennessee office.  (ECF No. 1 ¶ 16; Lockhart

Statement of Undisputed Material Facts ("Lockhart SOMF"), ECF No. 94-4 at PageID 1156.)

As program supervisor, Lockhart oversaw D&S's residential group homes and in-home support

staff in and around Memphis, Tennessee.  (Id. at PageID 1157.)  She worked with other D&S

program supervisors and personnel working out of D&S's Kate Bond location, including D&S

Program Director Kanika Robinson, who Lockhart reported to directly, and D&S Executive

Director Eric Buress.  (Id.)

        In December 2016, D&S transitioned its program supervisors from exempt to non-

exempt employees.  (Id. at PageID 1156.)  D&S made this switch because of changes made to

the FLSA's white collar exemptions.  (Id.)

        At all times relevant to this case, D&S had in place time-reporting policies and

procedures that required its employees to report both their regular and overtime hours.  (See id.

at PageID 1157–59.)  When Lockhart was hired in March 2016, she acknowledged that she

understood and had reviewed D&S's time reporting policies and procedures.  (Id. at PageID

1157.)  These policies and procedures included: (1) a requirement that "non-exempt employees .

. . show all time actually worked"; (2) "a warning that a failure to record through the system all

time worked may result in disciplinary action"; (3) "a disclaimer that non-exempt employees are

eligible for overtime pay"; and (4) "a requirement that overtime be approved prior to being

worked."  (Id. (citing Time Records Policy, ECF No. 34-5).)  In March 2016, Lockhart also

acknowledged that she would not falsify D&S company records.  (Id. at PageID 1157–58.)  D&S

trained Lockhart on what qualifies as "working time" under the FLSA.  (Id. at PageID 1158.)

D&S utilized a timekeeping system called "UltiPro."  (<u>Id.</u>)  The UltiPro system allowed employees to clock in and out of work and to report hours worked outside of their regularly scheduled work hours.  (<u>Id.</u>)  The system also allowed employees to make changes to their time entries.  (<u>Id.</u>)  Lockhart was able to report her "off-the-clock" hours (hours worked after the close of regularly scheduled business) using the UltiPro system.  (<u>Id.</u> at PageID 1160.)  Lockhart could use the UltiPro "comments" feature to inform D&S, for example, if she forgot to clock out at a certain time or needed to be paid for a rest break that she worked through.  (<u>Id.</u> at PageID 1160–61.)  The UltiPro system also allowed Lockhart to report her after-hours work-related phone calls.  (<u>Id.</u> at PageID 1161.)  Lockhart testified that UltiPro allowed her to report if she needed to be "paid for hours that occurred away from the office," and that she generally tried "to be accurate" in recording her time.  (<u>Id.</u> at PageID 1161–62; Lockhart Deposition ("Lockhart Dep."), ECF No. 87-2 at PageID 580, 583, pp. 49:20-25, 63:4-8.)

D&S also allowed employees to use "call logs" to report work-related calls taken outside of their regularly scheduled work hours.  (Lockhart SOMF, ECF No. 94-4 at PageID 1159.)  Call logs allowed D&S employees to report their time spent taking work calls both in the office and at home outside of normal business hours.  (<u>Id.</u>)  Lockhart was aware of these call logs.  (<u>Id.</u>)

Lockhart also could report her off-the-clock hours via email.  (<u>Id.</u> at PageID 1162.)  During her deposition, Lockhart testified that although she did not recall "whether . . . it was an official way of reporting [her] time to D&S," she admitted that she had the ability to report time via email and that she had done so on at least one occasion.  (Lockhart Dep., ECF No. 87-2 at PageID 587, at p. 92:16-24.)

D&S paid Lockhart for all hours she reported.  (Lockhart SOMF, ECF No. 94-4 at PageID 1162; Lockhart Dep., ECF No. 87-2 at PageID 574, p. 13:13-20.)  Specifically, Lockhart testified that D&S paid her wages for all hours she reported as worked.  (Lockhart Dep., ECF No. 87-2 at PageID 574, at p. 13:17-20.)  Her reported time also occasionally included overtime.  (See Lockhart SOMF, ECF No. 94-4 at PageID 1163.)

Lockhart asserts that D&S management stressed that she and the other program supervisors should not work or accrue overtime.[3]  (Id. at PageID 1163.)  In her deposition testimony, Lockhart was unable to name the members of management who told Lockhart and other D&S employees that they should not accrue or work overtime hours.  (Id. at PageID 1163–64; Lockhart Dep., ECF No. 87-2 at PageID 578, p. 34:2-12.)  Lockhart expressed her concerns over D&S overtime policies to a coworker, but she did not mention her concerns to anyone else at D&S or anyone outside of D&S.  (Lockhart SOMF, ECF No. 94-4 at PageID 1164; Lockhart Dep., ECF No. 87-2 at PageID 577, pp. 26:3-25, 27:1-11.)  Although D&S never officially disciplined Lockhart for reporting her overtime hours, she testified that "management did stress verbally not to accrue any overtime hours."  (Lockhart SOMF, ECF No. 94-4 at PageID 1164; Lockhart Dep., ECF No. 87-2 at PageID 578, pp. 34:19-20, 35:9-10.)  Lockhart testified that D&S disciplined her office mate Nicole McCory for reporting overtime.  (Lockhart Dep., ECF No. 87-2 at PageID 578, p. 35:19-23.)

## B.    Lockhart's Allegations

Lockhart alleges that D&S failed to pay her for off-the-clock hours worked, including when she was "on her lunch break" and for "after hours calls," in violation of the FLSA.  (ECF

---

[3] This is a disputed fact.  The Court includes this sentence only to preface the rest of the undisputed facts related to Plaintiff's allegation.

No. 1 ¶ 45.)  Lockhart alleges that D&S required its employees, including Lockhart and other program supervisors, to work hours off the clock without reporting any of those hours.  (Id. ¶ 48.)  Lockhart alleges that D&S failed to adequately keep and preserve records of its employees' hours when it required Lockhart and other D&S employees to work unreported off the clock hours, thus preventing its employees from "determining wages, hours, and other conditions and practice[s] of employment, in violation of the FLSA . . . ."  (Id. ¶ 51.)  Lockhart also alleges that D&S willfully violated the FLSA, as D&S "showed reckless disregard for the fact that its compensation practices were in violation of the law."  (Id. ¶ 52.)

### C.     Procedural Background

Lockhart filed this collective action on August 28, 2018.  (ECF No. 1.)  D&S filed its Answer on October 31, 2018.  (ECF No. 13.)  On February 15, 2019, Lockhart filed a Motion to Conditionally Certify the Collective Action.  (ECF No. 29.)  On July 9, 2019, the Court entered an Order Granting the Motion to Conditionally Certify the Collective Action.  (ECF No. 44.)  On July 9, 2019, the Court entered an Amended Scheduling Order, setting the opt-in period following conditional certification of the collective action.  (ECF No. 45.)  On August 16, 2019, the Court Granted in Part and Denied in Part D&S's Motion to Clarify/Modify the Court's Conditional Certification Order.  (ECF No. 55.)  The Court then entered a Second Amended Scheduling Order on August 16, 2019.  (ECF No. 56.)

On November 20, 2019, the Parties filed a Joint Motion to Partially Amend the Second Amended Scheduling Order.  (ECF No. 69.)  The Third Amended Scheduling Order, entered on November 22, 2019, extended the close of discovery to February 29, 2020 and further extended

the deadlines for filing dispositive motions and motions to decertify the collective.  (ECF No. 70.)

On February 3, 2020, Lockhart filed her Motion for Leave to Amend the Complaint (ECF No. 74), which the Court denied on March 17, 2020.  (ECF No. 81.)  The Court also extended the close of discovery to February 14, 2020.  (ECF No. 79.)  The Court granted D&S's unopposed motion to extend the dispositive motions deadline on March 26, 2020.  (ECF No. 86.)

On April 10, 2020, D&S filed both its Motion for Summary Judgment (ECF No. 87) and its Motion to Decertify the Conditionally Certified Collective[4] (ECF No. 88).  Lockhart filed her Response in Opposition to the Motion to Decertify on May 1, 2020 (ECF No. 90), and she filed her Response in Opposition to the Motion for Summary Judgment on May 8, 2020 (ECF No. 94).

## II.     LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

---

[4] This Order only addresses the first of these motions.

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted); see also Kalich v. AT&T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

In order to "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a

genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Services, LLC, No. 1:08 CV 02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247–254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit

that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient.  See Mitchell, 964 F.2d at 584–85.

## III.    ANALYSIS

### A.    Plaintiff has met her burden of proving a claim of uncompensated overtime in violation of the FLSA.[5]

Section 207(a)(1) of the FLSA provides, "[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess [of forty hours] at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The FLSA requires employers to pay its employees time-and-a-half overtime wages for every hour they work over forty hours in a single workweek.  Viet v. Le, 951 F.3d 818, 822 (6th Cir. 2020).  To prevail on an FLSA overtime claim, the plaintiff must show that she worked more than forty hours in a workweek and that she was not paid overtime for the hours she worked in excess of forty hours during that week.[6]  See Stansbury v. Faulkner, No. 2:18-02746, 2020 WL 807540, at *3 (W.D. Tenn. Feb. 18, 2020); see also Whaley v. Henry Ford Health Sys., 172 F. Supp. 3d 994, 1001 (E.D. Mich. 2016).

---

[5] Plaintiff does not reference her unpaid lunch hours claim or her minimum wage claim in her Response, which Defendant addresses in its Motion for Summary Judgment.  (ECF No. 87-6 at PageID 612.)  Plaintiff's failure to respond to Defendant's argument in its Motion constitutes a forfeiture of her unpaid rest break/minimum wage claims.  See Brown v. VHS of Michigan, Inc., 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").  Therefore, Plaintiff's unpaid lunchtime and minimum wage claim, unrelated to her uncompensated overtime or off-the-clock claims, are hereby **DISMISSED WITH PREJUDICE**.

[6] In addition, "a plaintiff must establish . . . an employer-employee relationship [and] . . . that the employer or its employees are engaged in interstate commerce . . . ."  Faulkner, 2020 WL 807540, at *3.  Defendant does not challenge these two elements; therefore, the Court finds that they have been proven for purposes of summary judgment.

"An employee who claims that [she] was not paid this overtime rate 'has the burden of proving that [she] performed work for which [she] was not properly compensated.'" <u>Viet</u>, 951 F.3d at 822 (quoting <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946), <u>superseded by statute on other grounds as stated in</u> <u>Carter v. Panama Canal Co.</u>, 463 F.2d 1289, 1293 (D.C. Cir. 1972)).  The plaintiff "must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" <u>Myers v. Copper Cellar Corp.</u>, 192 F.3d 546, 551 (6th Cir. 1999) (quoting <u>Anderson</u>, 328 U.S. at 686–87) (internal quotation marks omitted); <u>see also</u> <u>O'Brien v. Ed Donnelly Enters., Inc.</u>, 575 F.3d 567, 602 (6th Cir. 2009).  "The most common method of proof of undercompensation is discovery and analysis of the employer's records."  <u>Keller v. Miri Microsystems LLC</u>, 781 F.3d 799, 816 (6th Cir. 2015).  A plaintiff's testimony alone, however, can still satisfy this burden.  <u>See</u> <u>Moran v. Al Basit LLC</u>, 788 F.3d 201, 205 (6th Cir. 2015) ("[A] Plaintiff's testimony can create a genuine issue of material fact foreclosing summary judgment in a lawsuit brought under the FLSA."); <u>see also</u> <u>Faulkner</u>, 2020 WL 807540, at *8 ("When an employer has not introduced records that definitively establish the hours that an employee worked, an employee's testimony to the number of hours she worked is enough to create a genuine issue of material fact to preclude summary judgment." (citing <u>Keller</u>, 781 F.3d at 816)).

To survive summary judgment, the plaintiff must demonstrate specific facts and cannot rely solely on conclusory allegations of unpaid overtime compensation.  <u>Viet</u>, 951 F.3d at 822–23.  "Generally speaking, if an employee describes a specific work schedule exceeding 40 hours, courts have found the testimony sufficient."  <u>Id.</u> at 823.  "If, by contrast, the employee testifies generically that the employee worked overtime without providing details to support this claim, courts have found that the testimony falls short."  <u>Id.</u>

A plaintiff will meet her evidentiary burden if she details with some specificity the hours she worked in a typical workweek and describes the tasks that made up the employee's work hours.  See, e.g., Moran, 788 F.3d at 205 (finding that the plaintiff created genuine dispute of material fact when his testimony, although "lack[ing] precision," established his "weekly work schedule, including typical daily start and end times which he used to estimate a standard work week of sixty-five to sixty-eight hours"); Keller, 781 F.3d at 816 (plaintiff's testimony that he worked more than forty hours per week combined with undisputed facts that plaintiff worked six days a week and performed four jobs a day, each of which lasted two-and-a-half hours, created a genuine dispute of material fact to preclude summary judgment).  By contrast, the Sixth Circuit has found that an employee failed to meet his evidentiary burden of proving uncompensated overtime when he alleged that he worked over 60 hours in a week without providing specific facts about his daily work schedule and without providing a rough estimate of the average hours he worked each day.  See Viet, 951 F.3d at 824–25.

Defendant contends that Lockhart "has offered nothing more than conclusory testimony with respect to her uncompensated work time."  (ECF No. 87-6 at PageID 612.)  Specifically, Defendant argues that Lockhart "cannot give a specific date on which any one of these hours were worked" and that her estimates of her uncompensated hours cannot withstand summary judgment.  (Id.)  Defendant relies heavily on the Sixth Circuit's opinion in Viet v. Le to support its argument.  (Id.)

Plaintiff asserts that she has offered more than enough evidence to support her unpaid overtime claim.[7]  (ECF No. 94 at PageID 1102–03.)  Plaintiff asserts that her "official" workday

---

[7] Defendant asserts that Plaintiff waived her claim because she failed to explicitly challenge Defendant's reliance on Viet or White.  (ECF No. 98 at PageID 1187.)  The Court is not persuaded by this argument.  First, although Plaintiff did not explicitly cite to Viet or White in her Response to the Motion, she did respond to

ended at 5:00 p.m. every day, but that her job as program supervisor required her to work at least one and sometimes more than three hours of overtime after she officially clocked out for the day. (Id.)  She also asserts that she was on call "24/7" and consistently worked after hours.[8]  (Id.)

Before addressing the merits of Defendant's argument, the Court finds that it may consider the affidavit submitted by Plaintiff after Defendant filed its Motion for Summary Judgment.[9]  (See ECF No. 94 at PageID 1102–03.)  The "sham affidavit" rule provides, "[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier testimony."  Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997).  This rule, however, does not prevent the district court from considering an affidavit filed after a motion for summary judgment that adds

_____

Defendant's argument that she failed to provide sufficient evidence to support her unpaid overtime wages claim. (See Response, ECF No. 94 at PageID 1102–04.)  Second, even if Plaintiff did fail to respond to the argument (which she did not), the Court would still not be inclined to grant the Motion solely on forfeiture grounds; under Rule 56(c) the Court must still assess the Defendant's argument to determine whether there is an absence of any genuine disputes of material fact.  See Miller v. Shore Fin. Servs., Inc., 141 F. App'x 417, 419 (6th Cir. 2005); see also Schenkenfelder v. Blitz, U.S.A. Inc., No. 3:06-cv-452, 2009 WL 2496460, at *1 (E.D. Tenn. Aug. 12, 2009).

[8] Defendant's Reply asserts that Plaintiff cannot make use of any evidence regarding on-call hours because it was not alleged in the Complaint and because the theory of recovery premised on on-call hours contained in Plaintiff's proposed amended complaint was rejected by the Court.  (See Reply, ECF No. 98 at PageID 1187–88.) Defendant is correct that the Court rejected this as an independent claim or theory of FLSA violations when it denied Plaintiff's Motion for Leave to Amend.  (Order Den. Mot. for Leave to Am., ECF No. 81 at PageID 554–55.) Plaintiff cannot use evidence of being "on-call" as the basis for an independent FLSA violation, but she can use the evidence that she was on-call 24/7 to demonstrate that she was expected to work hours off the clock, which falls under her Complaint's original allegation of uncompensated overtime hours.  (Id. at PageID 554.)  The Court will consider such evidence as support for her allegations that D&S expected her to work hours after the close of her regularly scheduled workday despite discouraging Lockhart from reporting those hours.

[9] Defendant's Reply objects to the nature of the allegations contained in Plaintiff's affidavit.  (Reply, ECF No. 98.)  Defendant relies on a recent decision from the Western District of Tennessee, Craddock v. FedEx Corp. Servs., Inc., for the proposition that the Court should consider the affidavit with "great skepticism."  No. 2:17-cv-2780-TLP-cgc, 2020 WL 2543297, at *1 n.1 (W.D. Tenn. May 19, 2020).  (Id. at PageID 1182–83.)  The court in Craddock dealt with an affidavit that the plaintiff used to "dispute many of Defendant's facts" "without support in the record . . . ."  Id.  Plaintiff's Response provides more than just her self-serving affidavit to support her argument and has cited to her own deposition testimony.  Cf. Capital Telecom Holdings II, LLC v. Grove City, 403 F. Supp. 3d 643, 649 (S.D. Ohio 2019) ("But self-serving affidavits alone are not enough to create an issue of fact sufficient to survive summary judgment." (emphasis added)).  Moreover, the Sixth Circuit case relied on by Craddock, while helpful to that case, does not readily apply to Plaintiff's case.  See Freeman v. Twombley, 483 F. App'x 51, 58 (6th Cir. 2012) (dealing with a self-serving affidavit filed by a habeas petitioner in an ineffective assistance of counsel claim related to a trial that occurred 17 years before the filing of the case).

to but does not contradict the affiant's earlier deposition testimony.  See Aerel, S.R.L. v. PCC Airfoils, LLC, 448 F.3d 899, 907 (6th Cir. 2006) ("Such an affidavit fills a gap left open by the moving party and thus provides the district court with more information, rather than less, at the crucial summary judgment stage.").  A district court must strike such an affidavit only when the "affidavit directly contradicts the nonmoving party's prior sworn testimony."  Id. at 908.  "If . . . there is no direct contradiction [of the deposition testimony], then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'"  Id. (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)).

The portions of Lockhart's affidavit relied on in her Response do not directly contradict her deposition testimony "but rather reveal[] information that was not fully explored during that testimony."  Id. at 909.  Her affidavit is a "legitimate effort[] to supplement the summary judgment record [rather than an] attempt[] to create a sham issue of material fact."  Id. at 908; see also Clinton River Cruise Co. v. DeLaCruz, 213 F. App'x 428, 435 (6th Cir. 2007) (post-deposition affidavits were "not contradictory, but, rather, offer[ed] a more complete explanation of" the facts at issue); Chavez v. Dakkota Integrated Sys., LLC, 832 F. Supp. 2d 786, 794 (W.D. Ky. 2011) (finding as proper a plaintiff's affidavit filed in response to a motion for summary judgment when it "expands areas of testimony that were not fully developed during the deposition or discusses areas of testimony that were not explored at all").  The Court will consider Plaintiff's affidavit in ruling on the Motion.

Turning to the merits of Lockhart's argument, and construing all inferences in her favor, the Court finds that Lockhart has provided more than conclusory statements asserting her right to

compensation for hours worked off the clock.[10]  Plaintiff's testimony and affidavit "coherently describe[] [her] weekly work schedule" with sufficient specificity to preclude summary judgment in favor of D&S.  See Moran, 788 F.3d at 205.  Lockhart estimates that she worked "at least 50 hours per week" when she was a salaried worker, and that "[w]hen [D&S program supervisors] shifted to hourly compensation, that expectation did not change[.]"  (Lockhart Aff., ECF No. 94-1 at PageID 1110, ¶¶ 5–6.)  Lockhart states that although her "official workday ended at 5:00 p.m., when [she] clocked out, [] on almost every weekday [she] would continue working until at least 6:00 p.m. and often until 8:00 p.m. or 9:00 p.m. in order to keep up with the heavy workload of [her] position."  (Id. at PageID 1110, ¶ 15).  She estimates that she worked "unentered overtime hours" of "one to two hours each weekday and three to four hours each weekend, on average," totaling "approximately 10 hours per week."  (Id. at PageID 1111, ¶¶ 22–23.)  Lockhart's testimony demonstrates that she worked over fifty hours a week, that her job typically required her to work at least two to three hours "off the clock" every day past her regularly scheduled workday, and that she worked several hours during most weekends.

Plaintiff has also provided evidence demonstrating that her job required her to work beyond her regularly scheduled hours.  Her affidavit indicates that because D&S "maintains operations 24 hours a day, 7 days a week," it required its program supervisors to supervise these

---

[10] Defendant asserts in its Reply that many of Plaintiff's statements in her affidavit are "vague and speculative," relying on a case from this Court and from the Eastern District of Tennessee.  (ECF No. 98 at PageID 1182–84.)  These statements are not conclusory allegations, but are factual statements made from personal knowledge and supported by evidence in the record.  Although the fact that some of these assertions may lack significant factual support beyond Plaintiff's own testimony, as, for example, her assertion that she was discouraged from reporting overtime, the lack of corroboration goes to the weight of the testimony not to its substance.  See Wheeler v. Knox Cty., No. 3:16-cv-108, 2018 WL 4685454, at *7 (E.D. Tenn. Sept. 29, 2019).  Defendant points to one line from Plaintiff's statement of facts, that D&S supervisors "knew or should have know that the Program Supervisors had to work considerably more than 40 hours per week in order to adequately perform their jobs."  (Id. at PageID 1181.)  The Court agrees that this is a conclusory statement.  That said, the Court may consider the evidence supporting this conclusion (which the statement cites to in the record) to determine whether a reasonable jury could come to such a conclusion based on the record.

operations 24/7.  (Id. at PageID 1110–11, ¶¶ 7, 19.)  In the context of "[r]esidential group homes

. . . [t]he individuals that live in the group homes do not stop living at 5:00 p.m[.]"  (Id. at

PageID 1111, ¶ 19.)  Lockhart asserts that "[i]n addition to off-the-clock hours spent working at

the office and at our assigned homes, [p]rogram supervisors were required to keep their company

phones with them at all times, 24 hours per day, 7 days a week," and that they were "expected to

respond to any work-related requests immediately at all hours of the day or night."  (Id. at

PageID 1111, ¶¶ 25–26.)  Lockhart's role as program supervisor required her to work "extra

hours" because program supervisors were required to "respond[] to emergency calls to provide

guidance and supervision to staff members; purchas[e] essential supplies for the group homes

after hours; fill[] in for the home managers in their absence; secur[e] replacement[s] for absent

staff members; [and] deal[] with staff on-the-job injuries . . . ."  (Id. at PageID 1110–11, ¶ 18.)

From this evidence, a reasonable jury could find (1) that D&S expected Lockhart and other

program supervisors to work long hours, and (2) that she worked an estimated 10-hours per week

of overtime as part of her 50-hour workweek.

   Lockhart has also provided evidence that she was not compensated for those hours.

Lockhart testified that D&S discouraged its program supervisors from reporting these off-the-

clock hours and that D&S threatened disciplinary action for reporting overtime.  (See Lockhart

Dep., ECF No. 94-2 at PageID 1119–20, at pp. 14:1-25, 16:2-10, 18:12-120.)  This "unentered

overtime" totaled approximately one to two hours each weekday and three to four hours on the

weekend.  (Lockhart Aff., ECF No. 94-1 at PageID 1111, ¶ 22.)  From this testimony it is

reasonable to conclude that Lockhart was not paid for this "unentered," discouraged overtime.

   Because Plaintiff's testimony by itself may preclude summary judgment, see Keller, 781

F.3d at 816, and because Plaintiff is not required to "recall [her] schedule[] with perfect accuracy

in order to survive a motion for summary judgment," see Moran, 788 F.3d at 205, the Court finds that her testimony is sufficient to meet her burden.  See Ramirez v. Rifkin, 568 F. Supp. 2d 262, 273 (E.D.N.Y. 2008) ( finding that "triable issues of fact for trial" existed when the plaintiff provided an estimate of their workweek hours, of the hours they worked past their regularly scheduled workday, which ended at 5:30 p.m., and how the nature of her work required her to work beyond those regularly scheduled hours).

Defendant's reliance on the Sixth Circuit's recent decision in Viet v. Le does not support a contrary finding.  Plaintiff's case differs in material ways from the plaintiff's case in Viet.  In Viet, the plaintiff's testimony could not withstand the defendant's motion for summary judgment because he did not "fill in his general 60-hour estimate with specific facts about his daily schedule."  951 F.3d at 824.  Unlike the plaintiffs in Moran and Keller, whose testimony "established specific day-to-day hourly routines that added up to well over 40 hours per week," Viet could not provide information about his typical workday or whether he worked "10 hours per day."  Id. at 824–25.  He provided no estimate of how long his daily off-the-clock tasks would take and provided conflicting estimates of his time spent working after hours.  Id. at 825.

Lockhart's testimony provides more detail than the plaintiff's testimony in Viet. Lockhart's testimony provides an estimate of her hours spent working in an average workweek which she has "filled in" with information describing how she spent those hours.  She has provided specific estimates of the hours she spent working each week beyond her regularly scheduled hours, and she has demonstrated how the nature of her work and the discrete tasks required of her job necessitated after hours work.  Lockhart also has not given conflicting estimates of the hours she worked past her regularly scheduled work hours.  Cf. Viet, 951 F.3d at 825 (noting the plaintiff provided "conflicting testimony" of how long his tasks took).

Requiring plaintiffs like Lockhart to provide a detailed accounting of their uncompensated overtime hours and week-to-week schedules, as suggested by Defendant, would run contrary to the remedial purpose and requirements of the FLSA.  See Anderson, 328 U.S. at 687 ("The remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee.").  Employees need not "recall their schedules with perfect accuracy in order to survive a motion for summary judgment." Moran, 788 F.3d at 205.  "It is unsurprising, and in fact expected, that an employee would have difficulty recalling the exact hour he left work on a specific day months or years ago." Id.  This is so given that "'the employer . . . has the duty under § 11(c) of the [FLSA] to keep proper records of wages [and] hours,' and '[e]mployees seldom keep such records themselves.'" Id. (quoting Anderson, 328 U.S. at 687).  If the Court were to find insufficient as a matter of law Lockhart's testimony, which provides some specificity in her recounting of her typical regular work schedule, the nature of her work, and the hours she was required to work off the clock, it would impose an unfairly high evidentiary burden on FLSA plaintiffs to prove an unpaid overtime claim.

In summary, the Court finds that Lockhart has created a genuine dispute of material fact as to whether she worked over forty hours a week and that she was not compensated for those off-the-clock hours.

### B.    Lockhart has created a genuine dispute of material fact as to whether D&S knew she was working overtime and whether D&S prevented her from reporting her overtime.

As stated supra, "'[A]n FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated.'"  White v. Mem'l Health Care Corp., 699 F.3d 869, 873 (6th Cir. 2012) (quoting Myers, 192 F.3d at 551).

"Work not requested but suffered or permitted is work time." 29 C.F.R. § 785.11. "If an 'employer knows or has reason to believe that [a worker] is continuing to work [then] the time is working time.'" White, 699 F.3d at 873 (quoting 29 C.F.R. § 785.11).

An employer is not liable under the FLSA if the employer has no reason to know that the employee is working uncompensated off-the-clock hours. See Wood v. Mid-Am. Mgmt. Corp., 192 F. App'x 378, 380 (6th Cir. 2006) ("[A]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing." (quoting Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998))).  "[I]f an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process."  White, 699 F.3d at 876 (citing Hertz v. Woodbury Cty., 566 F.3d 775, 781–83 (8th Cir. 2009)) (referred to in this Order as the "White Rule"); see also Frye v. Mem'l Baptist Hosp., Inc., No. 07–2708, 2011 WL 1595458, at *9 (W.D. Tenn. Apr. 27, 2011) ("Courts in this circuit have denied recovery in FLSA cases where an employee is aware of her employer's system for reporting work that falls outside the employee's normal, forty-hour shift, but fails to report that work.").

A plaintiff's failure to report time via an employer's established reporting process, however, does not automatically bar a plaintiff from recovering unpaid wages for off-the-clock hours worked.  An employee may recover unpaid overtime wages for hours worked off the clock under the FLSA if the employee can demonstrate that her employer discouraged its employees from reporting overtime, regardless of whether the employer had in place an established reporting system. See White, 699 F.3d at 876 (collecting cases "involv[ing] situations where the employer prevented the employees from reporting overtime"); see also Kuebel v. Black & Decker Inc., 643 F.3d 352, 356–57, 363–64 (2d Cir. 2011) (finding that an employer's actions

preventing employee from reporting overtime via its established time-keeping system was an

FLSA violation); Brennan v. Gen. Motors Acceptance Corp., 482 F.2d 825, 827 (5th Cir. 1973)

(plaintiff's employer discouraged its employees from reporting their overtime hours); Aponte v.

Modern Furniture Mfg. Co., 14-CV-4813 (ADS) (AKT), 2016 WL 5372799, at *12 (E.D.N.Y.

Sept. 26, 2016) (barring plaintiffs' FLSA unpaid overtime claims on grounds that they failed to

record their overtime would run counter to the FLSA's remedial purposes).

Lockhart does not dispute that D&S provided her with several reasonable methods to

report her overtime hours.  See supra Sec. I.A.  Lockhart also does not dispute that D&S paid her

for all hours that she reported.  See supra Sec. I.A.  (See Lockhart Dep., ECF No. 87-2 at PageID

574, at p. 13:13-20.)  D&S asserts that these admissions foreclose her claim for unpaid overtime

compensation.  (ECF No. 87-6 at PageID 614–15.)  D&S asserts that Lockhart's admissions

demonstrate that when "Plaintiff utilized [its time-reporting] process, she was fully

compensated."  (Id. at PageID 614.)  D&S argues, "Plaintiff now seeks to hold D&S liable for

times she did not use the process[;] [t]hat is, she seeks to hold D&S liable for hours that she

voluntarily—and, in turn, unreasonably—failed to report.  Sixth Circuit law bars Plaintiff from

doing so."  (Id. at PageID 614–15.)

Defendant's argument is not persuasive.  As the above discussion makes clear, Sixth

Circuit law does not bar Lockhart from holding D&S liable for hours that she voluntarily

withheld if D&S knew that she was working those hours and discouraged her from reporting

those hours.  See White, 699 F.3d at 876.  The Sixth Circuit has not held that the White Rule bars

an employee's FLSA claim that seeks to recover compensation for unreported, off-the-clock

hours when her employer either discourages its employees from reporting hours worked off the

clock or had actual or constructive knowledge that its employees were required to work off the

clock.  The Sixth Circuit expressly distinguished White's case from cases that "involved situations where the employer prevented the employees from reporting overtime or were otherwise notified of the employees' unreported work."  699 F.3d at 876.  The Sixth Circuit has since made clear that "White carves out two exceptions to the rule, finding that employers who 'prevent[] the employees from reporting overtime or [are] otherwise notified of the employees' unreported work' are still on the hook for unpaid overtime."  Craig v. Bridges Bros. Trucking LLC, 823 F.3d 382, 389 (6th Cir. 2016) (quoting White, 699 F.3d at 876).  District courts in the Sixth Circuit have also recognized these exceptions.  See, e.g., Rangel v. Paramount Heating & Air Conditioning, LLC., No. 2:17-CV-473, 2019 WL 4345698, at *3 (S.D. Ohio Sept. 12, 2019); Ridner v. S. Cent. Area Transit Serv., No. 1-15-CV-00006, 2017 WL 6602002, at *6 (M.D. Tenn. Feb. 2, 2017).

Moreover, not recognizing these exceptions and accepting Defendant's argument "would permit an employer to obligate its employees to record their own time, have its managers unofficially pressure them not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime," a result that would "undermine the remedial goals of the FLSA . . . ."  Kuebel, 643 F.3d at 363–64; see also Brennan, 482 F.2d at 827.  The Court will therefore analyze whether Plaintiff's case falls within either of these exceptions.

Plaintiff has produced enough evidence to meet the first of the White exceptions. Lockhart has created a genuine dispute of material fact as to whether D&S prevented or discouraged her from reporting her overtime hours.  She testified that D&S management warned her and the other program supervisors that they would be subject to disciplinary action if they reported overtime hours, and that D&S expressly discouraged Lockhart and other supervisors

21

from reporting overtime.  (See, e.g., Lockhart Dep., ECF No. 94-2 at PageID 1119–20, 1123, pp. 14:6-12, 18:12-15, 31:8-10, 32:22-24.)  Lockhart's affidavit indicates that her supervisor, Eric Burress, told her that she and other program supervisors were not to report more than 80 hours of work in a pay period.[11]  (ECF No. 94-1 at PageID 1110, ¶ 10.)  Lockhart identified another program supervisor, Nicole McCory, who D&S disciplined for reporting overtime hours. (Lockhart Dep., ECF No. 94-2 at PageID 1119, p. 14:6-18.)  Although D&S ultimately compensated McCory for these hours, D&S nonetheless disciplined her for reporting her overtime.  (Id. at PageID 1119, p.15:7-18.)  This evidence precludes granting summary judgment in D&S's favor.  See Rangel, 2019 WL 4345698, at *3 (finding the plaintiff created a genuine dispute of material fact by testifying that her supervisor told her "not to 'submit' overtime" and not to work overtime); see also Ridner, 2017 WL 6602002, at *6 (plaintiff demonstrated he was told not to report overtime, even though his supervisors knew his job required after hours work).

Lockhart has also provided evidence demonstrating the second White exception, that D&S was "otherwise notified" that she and other program supervisors were working unreported overtime hours.  See Craig, 823 F.3d at 389.  An employer can be "otherwise notified" of an employee's unreported overtime if the employer has constructive knowledge of the employee's unreported overtime.  See Craig, 823 F.3d at 388.  An employer has constructive knowledge of an employee's unreported overtime when it "should have discovered [the unreported overtime]

---

[11] Although in her deposition Lockhart was unable to identify who in management explicitly told her that she was not to work overtime hours (see Lockhart Dep., ECF No. 94-2 at PageID 1119, p. 16:11-19), the portion of her affidavit that expressly identifies Eric Burress need not be stricken under the "sham affidavit" rule described supra.  It is not directly contradictory to her deposition testimony, as she was unable to recall at the time of her deposition who specifically told her that she was not to record overtime hours.  See Yeager v. Bowlin, 693 F.3d 1076, 1081 (9th Cir. 2012) ("We caution that newly-remembers facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham.").  The Court is also not inclined to apply the "sham affidavit" rule because it "should be applied with caution because it is in tension with the [principle] that the court is not to make credibility determinations when granting or denying summary judgment . . . ."  Wheeler v. Knox Cty., No. 3:16-cv-108, 2018 WL 4685454, at *7 (E.D. Tenn. Sept. 29, 2019) (quoting Yeager, 693 F.3d at 1080) (internal quotation marks omitted).

through the exercise of reasonable diligence."  Id. (quoting Carlisle Equip. Co. v. U.S. Sec'y of

Labor & Occupational Safety, 24 F.3d 790, 793 (6th Cir. 1994)) (internal quotation marks

omitted).  "Reasonable diligence" does not impute an "expectation of omniscience."  Id. at 389.

An employer's constructive knowledge of its employees' unreported overtime hours is a question

of fact best decided by a jury.  Id. at 391; see also Rangel, 2019 WL 4345698, at *3 (finding that

a jury should find whether a defendant had constructive knowledge of overtime hours worked).

   Lockhart has provided evidence from which a reasonable jury could find that D&S

should have known, through the exercise of reasonable diligence, that its program supervisors

were working unreported off-the-clock hours.  D&S transitioned its workers from exempt to non-

exempt status in December 2016 and did not alter their job expectations.  (Lockhart SOMF, ECF

No. 94-4 at PageID 1156; Lockhart Aff., ECF No. 94-1 at PageID 1110, ¶¶ 3–6.)  Lockhart

testified that D&S expected its program supervisors to work "at least 50 hours per week" even

after this transition.  (Lockhart Aff., ECF No. 94-1 at PageID 1110, ¶¶ 5–6.)  D&S never

developed a "rotating after hour/on-call schedule for the Program Supervisors, meaning that each

Program Supervisor [was] responsible for all of their assigned homes, 24 hours a day, 7 days a

week," and, because D&S did not expand the number of D&S supervisors, Lockhart and the

other program supervisors "had to routinely work overtime."  (Id. ¶¶ 7–8.)  Lockhart states that

"management team members at D&S had all worked in residential services for several years and

knew that [a program supervisor's workday] does not end at 5:00 p.m."  (Id. ¶ 14.)

   Lockhart's supervisory role required her to deal with a host of management related issues

that required working overtime.  (Id. ¶ 18.)  The residential group homes she was responsible for

required 24/7 supervision.  (Id. at PageID 1111, ¶ 19.)  Program supervisors like Lockhart were

assigned company phones, and D&S required Lockhart and others to "keep their company

23

phones on and with them at all times, 24 hours a day, 7 days a week."  See Ridner, 2017 WL 6602002, at *6 (issuance of company cellphone for use outside of work supported finding of constructive knowledge).  (Id. ¶ 25.)  The nature of Lockhart's work responsibilities as a D&S program supervisor, her testimony regarding her continued after hours responsibilities of supervising the group homes which she managed, and the fact that many of her supervisors "rose through the ranks" and held her position in the past, all create a genuine dispute of material fact as to whether D&S had constructive knowledge of Lockhart's after hours or off-the-clock work. Because Plaintiff has provided evidence supporting this finding, the Court finds that a jury is in the best position to resolve this disputed question of fact.  See Craig, 823 F.3d at 391–92; see also Ridner, 2017 WL 6602002, at *6.

###### B.   Lockhart has created a genuine dispute of material fact as to whether D&S's conduct constitutes willful violations of the FLSA.

An employer willfully violates the FLSA if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]" McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  "An employer who acts unreasonably or negligently in violation of the FLSA does not act willfully."  Faulkner, 2020 WL 807540, at *12; see also Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d 832, 842 n.5 (6th Cir. 2002) ("[M]ere negligence by the employer is not sufficient to permit a finding of willfulness.").  The employee bears the burden of demonstrating willfulness.  Frye, 2011 WL 1595458, at *9; see also LeMaster v. Alternative Healthcare Sols., Inc., 726 F. Supp. 2d 854, 865 (M.D. Tenn. 2010) ("The plaintiffs bear the burden of proving that [defendants] knew or showed reckless disregard for the matter of whether [their] conduct was prohibited by the statute."

(quoting <u>Wilson v. Guardian Angel Nursing, Inc.</u>, No. 3:07-0069, No. 3:07-0069, 2008 WL

2944661, at *20 (M.D. Tenn. 2008)) (internal quotation marks omitted)).

Whether a defendant willfully violated the FLSA is a question of fact.  <u>Faulkner</u>, 2020

WL 807540, at *12; <u>see also</u> <u>Figueroa v. District of Columbia</u>, 923 F. Supp. 2d 159, 167 (D.D.C.

2013) ("The determination of willfulness is necessarily fact-specific.").  The willfulness of

defendant's FLSA violation is best resolved by the jury "unless there is no legally sufficient

evidentiary basis for a reasonable jury to find for the non-moving party."  <u>Taha v. Bucks Cty.</u>,

367 F. Supp. 3d 320, 333 (E.D. Pa. 2019) (quoting <u>Souryavong v. Lackawanna Cty.</u>, 872 F.3d

122, 126 (3d Cir. 2017)) (internal quotation marks omitted).

A reasonable jury could find that D&S willfully violated the FLSA when it actively

prevented its employees, whose jobs it understood required extensive off-the-clock work, from

reporting overtime.  <u>See</u> <u>Mornoe v. FTS USA, LLC</u>, 763 F. Supp. 2d 979, 991–92 (W.D. Tenn.

2011) ("[S]ince Plaintiffs contend that they did not record the time they worked overtime

because their supervisors[] instructed them not to, Defendants cannot escape a finding of

willfulness by asserting that Plaintiffs failed to properly document their overtime hours.").

"Courts have consistently concluded that a violation is willful where an employer intentionally

discourages or inhibits employees from accurately reporting overtime."  <u>Stanislaw v. Erie Indem.</u>

<u>Co.</u>, No. CA 07-1078, 2012 WL 517332, at *10 (W.D. Pa. Feb. 15, 2012); <u>see also</u> <u>Lopez v.</u>

<u>Children's Mem'l Hosp.</u>, No. 02 C 3598, 2002 WL 31898188, at *6 (N.D. Ill. Dec. 31, 2002)

(issue of willfulness submitted to jury when plaintiff demonstrated she was "discouraged" by her

supervisors from working overtime for "budgetary reasons" and failed to record overtime

because her supervisor did not want her to record overtime).

Because willfulness is a question of fact best resolved by the jury, see Faulker, 2020 WL 807540, at *12, any facts that may discredit her testimony, such as the fact that D&S had in place an accurate time recording system, should be considered by a jury and not resolved by the Court. Keubel, 643 F.3d at 365 (evidence of timekeeping policies "raises factual and credibility questions for trial, but it does not afford a basis for summary judgment"); see also Moran, 788 F.3d at 205 ("Whether [the plaintiff's] testimony is credible is a separate consideration that is inappropriate to resolve at the summary judgment stage.").

Therefore, the Court will not dismiss Plaintiff's allegations of willful violations of the FLSA.

## V.     CONCLUSION

For the foregoing reasons, D&S Residential Services LP's Motion for Summary Judgment is **DENIED**.

**SO ORDERED**, this 31st day of July, 2020.

    /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE